1  DANIEL ROBERT BARTLEY, CA Bar No. 79586
   BARTLEY LAW OFFICES
2  Mail: Post Office Box 686, Novato, CA  94948 0686
   Street 7665 Redwood Boulevard, Suite 200, Novato, CA  94945 1405
3  Telephone 415 898 4741   Fax 415 898 4841
   E-mail DanielBartleyLaw@aol.com
4
   Attorney for Relator  Jose Jed Ricardo Cruz, Jr.

**FILED**
AUG 1 5 2007
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# SEALED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, *ex rel.* JOSE JED RICARDO CRUZ, JR., <br><br> Plaintiff, <br><br> vs. <br><br> WESTERN CAREER COLLEGE, U.S. EDUCATION CORPORATION, and DOES 1-10, Inclusive, <br><br> Defendants. | Case No. 2:07-CV-1666 GEB DAD <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, WITH DEMAND FOR JURY TRIAL** <br><br> Causes of Action: <br><br> 1. Knowingly Causing A False Claim to Be Presented in Violation of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)&(2) <br><br> 2. Submission of False Record to Obtain Payment of a False or Fraudulent Claim in Violation of the Federal False Claims Act, 31 U.S.C. § 3729 (a)(2); <br><br> 3. Knowingly Causing A False Claim to Be Presented in Violation of the California False Claims Act, Cal. Gov. C. § 12651(a)(1), et seq; <br><br> 4. Submission of False Record to Obtain Payment of a False or Fraudulent Claim in Violation of the California False Claims Act, Cal. Gov. C. § 12651 (a)(2); <br><br> 5. Violation of California Bus. & Prof. C. § 17200. |

Relator Jose Jed Ricardo Cruz, Jr. alleges as follows:

## Introduction

1. This is an action by a student recruiter ("admissions specialist") to recover damages and civil penalties on behalf of the United States of America and the State of California, arising out of false claims approved and presented by his employer.

## The False Claims

2. This action seeks to recover damages and civil penalties, and obtain injunctive relief, on behalf of the United States of America and the State of California, arising out of false claims approved and presented by Defendants, via express and implied certifications, regarding the compliance with the incentive compensation ban set forth in Title IV of The Higher Education Act ("HEA"), enabling Defendants to obtain tens of millions of dollars in student tuition funding annually from the United States Department of Education, from at least six (6) years prior to the date of filing of this Complaint continually through the present, and from the State of California, from at ten (10) years prior to the date of filing of this Complaint, continually through the present.

3. Further, this action seeks to obtain injunctive relief pursuant to California Business and Professions Code §17200, the Unfair Competition Law, on the basis that Defendants' conduct was, and is, unlawful, unfair, and likely to be misleading to the public.

4. Defendants had, and continue to have, actual knowledge that they are not adhering to these certifications, that their certifications of adherence were, and continue to be, false and fraudulent certifications of compliance. Alternatively, Defendants act and acted with deliberate indifference and/or reckless disregard as to the truth or falsity of the claims.

## Jurisdiction and Venue

5. This is a federal action brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729, et seq., and subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331. This case arises from the wrongful conduct of the Defendants incident to obtaining funds from the United States

of Department of Education ("ED") and the State of California Student Aid Commission ("CSAC").

6. This Court has *in personam* jurisdiction over the Defendants under 31 U.S.C. § 3732(a), which authorizes nationwide service of process. 31 U.S.C. § 3732(a) provides "Any action under section 3730 may be brought in any judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant, can be found, resides, transacts business, or in which any proscribed by section 3729 occurred.

7. Venue is proper in the Eastern District of California because Defendant Western Career Colleges maintains and operates its executive offices within this District, and because it has a campus within this District.

### Relator

8. *Qui Tam* Relator Jose Jed Ricardo Cruz, Jr., is a citizen of the United States of America and is a resident of Alameda County, in the State of California.

9. Relator, as required by law, contemporaneous to the filing of the original Complaint, provided to the United States Attorney for the Eastern District of California, to the Office of the Inspector General ("OIG") of the United States Department of Education, to the United States Attorney General, and to the Attorney General ("AG") of the State of California, a copy of such original Complaint and a Disclosure Statement presenting material evidence and information related to the original Complaint.

10. The United States of America and the State of California are herein named plaintiffs because funds of the United States of America ("Federal funds") and funds of the State of California ("State funds") were, and are, awarded to Defendant Western Career College as a result of false claims alleged in this Complaint.

### Defendants Western Career College and U.S. Education Corporation

11. Established in 1967, Western Career College ("WCC") is a for-profit junior college whose executive offices are located in Sacramento, California. It has campuses at the following

locales in California: Sacramento, Stockton, Citrus Heights, San Leandro, Emeryville, San Jose, Antioch, and Pleasant Hill. WCC is accredited by the Accrediting Commission for Community and Junior Colleges of the Western Association of Schools and Colleges ("WASC"), an institutional accrediting body recognized by the U.S. Secretary of Education. WCC offers career training in the areas of health care, graphics design, and criminal justice. WCC offers an Associate in Science Degree and/or a Certificate of Achievement. Since 2003, WCC has been, and continues to be, a division of Defendant U.S. Education Corporation ("USEC"), of Mission Viejo, California. USEC is a privately held company owned by two private equity investment firms: Chicago Growth Partners and ClearLight Partners. USEC also owns Apollo College, another vocational school, which has nine campuses in Arizona, New Mexico, Idaho, Nevada, Oregon, and Washington.

12. Relator Cruz, shortly after his employment at WCC ensued, became aware of, and began documenting, violations of the HEA incentive compensation ban.

### Doe Defendants

13. Relative to all counts, Relators sue fictitious Defendants Does 1 through 1000, inclusive, because their names, and/or capacities, and/or facts showing them liable are not known presently. Relators are unaware of the true names and capacities of the Defendants sued as Does 1 through 1000. They will amend their complaint when the true names and capacities have been ascertained. Each Doe Defendant is responsible in some actionable manner for the events, occurrences, injuries and damages alleged herein.

### General Allegations Regarding Defendants

14. The terms "Defendants" will refer collectively to the aforesaid Defendants acting by and through their managerial employees, and each of them.

15. Managerial employees of the Defendants, in doing the acts and things described in this complaint, were acting within the course and scope of their respective agencies and/or employment with the Defendants, and each of them, with the knowledge and consent of the

Defendants, and each of them, unless otherwise indicated. At all relevant times each Defendant was the authorized agent of each other Defendant.

**Particulars Regarding False Certifications**

16. WCC and other post-secondary institutions that receive Higher Education Act ("HEA") Title IV student financial aid are required to meet very specific standards based upon federal guidelines overseen by ED. Congress established the Guaranteed Student Loan Program ("GSLP") in 1965 under the HEA, Title IV. The Program was enacted "to provide access to every student who wants to better himself through higher education." *Abuses in Federal Student Aid Programs*, 102 S.Rep. 58 (1991) ("Report"). The HEA supports higher education through educational grants (paid directly by the Department of Education) and government-insured loans (paid by banks, guaranteed by the Department of Education), to accredited institutions. The vast majority of funding stems from the Federal Family Education Loan Program ("FFELP"), 20 U.S.C. §1071, et seq., (a government-insured loan program) and the Federal Pell Grant Program, 20 U.S.C. §1070(a), et seq. (an educational grant program). Other programs include the federal Supplemental Educational Opportunity Grant Program ("SEOG") (20 U.S.C. §1070(b)) and the Federal Perkins Loan Program ("Perkins") (34 CFR Part 674, 682, and 685). Students do not request or receive the HEA education grants and loans. Instead, educational institutions, such as WCC, request these grants and loans on behalf of alleged eligible students. In response to WCC's funding requests, the federal government and the banks wire the funds directly into a WCC account. WCC's Adminnistration periodically signs a "Program Participation Agreement" ("PPA") with ED to enable WCC to receive such federally funded tuition payments. The HEA requires WCC's president or other designated official to periodically sign a PPA, setting forth compliance with a number of regulations and requirements, *including* that WCC meets the requirements established pursuant to part H (Program Integrity) of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies. Without a signed PPA containing this representation, WCC could not apply for or receive the government funds for tuition. Mirroring the language of the HEA funding statute, each PPA states, in bold print, on the first page: "The

execution of this agreement by the Institution and the Secretary is a prerequisite to the institution's initial or continued participation in any Title IV HEA Program." WCC, by and through its Administration, during the period ten (10) years preceding the date of filing of this Complaint through the present, falsely certified to ED WCC's compliance with the incentive compensation ban. WCC and ED have exclusive possession of, and control over, copies of such PPAs.

17. In addition to the certification to ED in the PPAs, WCC every year also falsely asserts compliance with the incentive compensation ban in "management assertion letters" written by WCC management for an annual compliance audit. WCC must submit to ED this annual compliance audit performed by an independent certified public accountant. Participation in the Title IV program is conditioned upon WCC submitting these audits certifying compliance with the HEA incentive compensation ban. WCC is ineligible to submit any claims for HEA funds unless it submits this annual audit. As a required part of the annual compliance audit, WCC certifies in a management assertion letter that it has "not paid to any persons or entities any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments . . . for each year at issue." WCC knows this certification is false, because WCC intentionally violates the incentive compensation ban.

18. The State of California offers Cal Grants to qualifying California students. The program is administered by the California Student Aid Commission ("CSAC"). WCC, by and through its Administration, from a period of ten (10) years preceding the filing of this Complaint, forward, periodically falsely certified to CSAC that WCC is approved by ED to participate in and administer the federal Pell Grant program and participates in at least two of three federal campus-based student aid pro programs. Such funds have been obtained by WCC via false certifications to the State of California. Such false certifications are made annually to CSAC via submission of a "Cal Grant Institutional Participation Agreement" ("IPA"). WCC and the State of California have exclusive possession of, and control over, copies of such IPAs.

\\\

19. HEA, Title IV, prohibits colleges and universities from providing "any commission, bonus or other incentive payment . . ." to recruiters based on recruiting activities. HEA, sections. 487(a) and 487(a)(20). The statutory ban was enacted 1992 amid reports of numerous institutions enrolling unqualified students, just to receive the federal student-aid funds from the United States Government. The statutory incentive compensation ban is a core prerequisite for an educational institution's eligibility to request and receive Title IV funds.

20. The United States Government awards approximately $6 billion a year or more to help students obtain their educations at colleges and vocational schools. The federal funds, however do not go to the students. Instead, the educational institution requests the funds of the United States Department of Education or a third party intermediary lender. The United States Government or the lender wires the funds directly into the institutions' accounts. The institutions then credit their students for tuition.

21. Students are responsible for paying back the United States Government once they graduate or stop attending the university. Students disqualified from a university must still repay the federal loans. These students, unable to complete their education and obtain a decent paying job to repay their federal loans, are forced into dire financial situations. Or, rather than being dropped from WCC, WCC requires the students to take additional courses. The institutions, meanwhile, retain the fraudulently obtained federal funds.

22. Dean Dunbar, who came from the DeVry University student enrollments program, is WCC's Executive Director of Admissions, supervising the Directors of Admissions at the respective WCC campuses. WCC, in flagrant violation of the Title IV ban, compensates enrollment counselors, including Relator, based directly upon enrollment activities. WCC tells each of its enrollment counselors that such enrollment counselor's salary will be based directly on the performance of the enrollments. WCC publishes "benchmarks" setting forth the enrollment activity numbers necessary for a particular rating or promotion. An enrollment counselor thus knows his or her salary range, based on his or her enrollment activities level. WCC furthermore "stack ranks" counselors based upon their number of enrollments. The top ranking counselors

are among the highest paid counselors, receiving the highest salary as well as incentive trips, awards and gifts based upon their enrollment numbers. WCC coaches its enrollment counselors that WCC management "only sees and cares about the enrollment numbers ." A WCC company-wide report that is published to all campuses is a weekly report called the "Star Report," e-mailed to all campuses . The "Star Report" reflects the number of enrollments each enrollment counselor has succeeded in making during the previous week. WCC teaches its enrollment counselors aggressive telephone sales techniques for getting students "in the door as soon as possible by end of the conversation ." WCC exerts pressure on its faculty to keep unqualified students in the programs, so as to keep the government dollars flowing. WCC codes the names of enrollments, and re-titles documents and awards for the incentives to criteria which give the false appearance of being qualitative measures. WCC knowingly violates the PPAs, because WCC managers hide their methods of rewarding recruiters with financial compensation through a web of lies in their policies and procedures.

23. WCC pressures such recruiters to enroll unqualified students and to make their numbers for the sake of keeping their jobs or risk losing employment. WCC creates fake or imaginary qualitative rankings while the real rankings for recruiters are solely based on the achievement of securing enrollments and such qualitative performance rating goes hand-in-hand with the achievement of meeting quantitative goals. The organization uses a series of complex methods to keep hidden the real reasons for rewarding high enrolling recruiters to avoid the detection from ED. Those who are rewarded and promoted would rather take the money and keep quiet or ignorant to the fact of the illegal activities while those who are not making their budgets are forced to comply to improve their enrollment performance or be forced out of the company.

24. WCC knowingly overlooks its own admissions policies to accept and enroll students and forces its education faculty to keep the students in the program. Overlooking certain admissions criteria can implicate extreme hazardous risk to public health and safety, given that many of the WCC graduates subsequently enter healthcare professions.

\\\

25  WCC falsely certifies it is in compliance with the PPAs' requirements, by promising that it will comply with key components of the PPAs' requirements, in addition to the incentive compensation ban. For example, the institution does not provide publications of required by the PPA [see 20 U.S.C. § 1094(a)(7)] to all of its prospective students and have such information [see as prescribed in 20 U.S.C. § 1092(a)(1)] ready to be made available upon the request of potential students.

26. Furthermore, WCC allows overlooking administrative procedures that would otherwise reduce the amount or total number enrollments, procedures including, but not limited to improperly following its admissions policies and not enforcing its satisfactory academic progress standards. The implications of not following some of these procedures may have serious threat to public health and safety.

27. Furthermore, to increase enrollments, WCC falsifies information such as accreditation agency approval of some programs, length of time required to complete a program requiring licensure, career information, services of the college, placement and graduation statistics. WCC therefore engages in substantial misrepresentation to potential students, in violation of 16 C.F.R. § 254.

**First Cause of Action:**

**Knowingly False Statements to Get a False or Fraudulent Claim Paid or Approved, in Violation of the False Claims Act, 31 U.SC. § 3729(a)(1)**

28. The allegations of paragraphs 1 through 27, inclusive, are fully incorporated herein by this reference, the same as if completely set forth herein

29. In performing all of the acts set out herein, Defendants, via express and implied certifications, submitted false claims to the United States of America by knowingly presenting, or causing to be presented, to one or more officers, employees or agents of the United States of America, a false and fraudulent claim for payment or approval, in contravention of the False

\\\

Claims Act (31 U.S.C. § 3729(a)(3)), to the damage of the treasury of the United States of America, by causing the United States to pay out money it was not obligated to pay.

30. Relators estimate that, as a proximate result of Defendants' conduct described herein, the amount of damages sustained by the United States of America is in the several hundreds of millions of dollars.

### Second Cause of Action:

**Knowingly False Records or Statements to Get a False or Fraudulent Claim Paid or Approved, in Violation of the False Claims Act, 31 U.S.C. §3729(a)(2)**

31. The allegations of paragraphs 1 through 27, inclusive, are fully incorporated herein by this reference, the same as if completely set forth herein.

32. By virtue of the acts described above, Defendants, via express and implied certifications, knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States of America, in contravention of the False Claims Act (31 U.S.C. § 3729(a)(2)), to the damage of the treasury of the United States of America, by causing it to pay out money it was not obligated to pay.

33. Relators estimate that, as a proximate result of Defendants' conduct described herein, the amount of damages sustained by the United States of America is in the hundreds of millions of dollars.

### Third Cause of Action:

**Knowingly Causing A False Claim to Be Presented in Violation of the California False Claims Act, Cal. Gov. C. § 12651(a)(1)**

34. The allegations of paragraphs 1 through 27, inclusive, are fully incorporated herein by this reference, the same as if completely set forth herein.

35. By virtue of the acts described above, Defendants, via express and implied certifications, knowingly made, used or caused to be made or used, a false record or statement to

get a false or fraudulent claim paid or approved by the State of California in contravention of the California False Claims Act, Cal. Gov. C. § 12651(a)(1), to the damage of the treasury of the State of California, by causing it to pay out money it was not obligated to pay.

36. Relators estimate that, as a proximate result of Defendants' conduct described herein, the amount of damages sustained by the State of California is in the tens of millions of dollars.

### Fourth Cause of Action:

### Submission of False Record to Obtain Payment of a False or Fraudulent Claim in Violation of the California False Claims Act, Cal. Gov. C. § 12651 (a)(2)

37. The allegations of paragraphs 1 through 27, inclusive, are fully incorporated herein by this reference, the same as if completely set forth herein.

38. By virtue of the acts described above, Defendants, via express and implied certifications, knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of California, in contravention of the California False Claims Act, Cal. Gov. C. § 12651 (a)(2), to the damage of the treasury of the State of California, by causing it to pay out money it was not obligated to pay.

39. Relators estimate that, as a proximate result of Defendants' conduct described herein, the amount of damages sustained by the State of California is in the tens of millions of dollars.

### Fifth Cause of Action:

### Unfair Competition in Violation of Cal. Business & Professions Code §17200

40. The allegations of paragraphs 1 through 27, inclusive, are fully incorporated herein by this reference, the same as if completely set forth herein.

41. The California Unfair Competition Law ("UCL"), at Business and Professions Code §17200, provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with §17500) of Part 3 of Division 7 of the Business and Professions Code."

42. The UCL is not confined to anti-competitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct.

43. Under the UCL's "unlawful" prong, a business practice constitutes unfair competition if it is forbidden by any law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. The "unlawful" prong of §17200 makes a violation of the underlying law a *per se* violation of §17200. For these purposes, if a "business practice" violates virtually any law, it also violates §17200 and may be redressed under that section; section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200. Defendants' above-described conduct was in violation of the UCL because Defendants' conduct was unlawful under federal and state laws and regulations prohibiting false statements regarding accreditation.

44. The UCL's "unfair" prong prohibits a business practice that is unfair. For these purposes, an unfair business practice such that it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. The "unfair" standard is intentionally broad. Defendants' above-described conduct was in violation of the UCL because such conduct offended established public policies; was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, including, but not limited to, in regard to protection of public funds and public health and safety.

45. Under the UCL's "fraudulent" prong, the UCL prohibits a business practice that is "fraudulent." For these purposes, a business practice is "fraudulent" if members of the public are likely to be deceived. Defendants' above described conduct was in violation of the UCL because Defendants' conduct was conduct likely to deceive members of the public.

46. Defendants' above-described conduct, lying about compliance with the incentive compensation ban, gives Defendants an unfair advantage over higher education institutions who do not lie about these facts. In addition, Defendants' lies in this regard cheat and deceive members of the general public who pursue studies at WCC. Finally, Relator Jose Jed Ricardo Cruz sustained damages and injury as a result of Defendants' conduct, given that he was forced to participate in an unlawful enrollment process via which WCC compelled Relator and all other enrollment counselors to do their work via an unlawful incentive compensation scheme based upon the number of enrollments. Accordingly, the UCL entitles Relator to seek appropriate equitable relief to prohibit any repetition of Defendants' conduct.

**Prayer for Relief**

WHEREFORE, Relator requests the following relief:

1. Judgment in favor of the United States of America against Defendants, jointly and severally, by reason of the violations of the False Claims Act as set forth above, in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than Eleven Thousand Five Hundred Dollars ($11,500.00), for each violation, plus three times the amount of damages which the United States Government has sustained, pursuant to 31 U.S.C. § 3729(a);

2. Judgment in favor of the State of California against Defendants, jointly and severally, by reason of the violations of the California False Claims Act as set forth above, in an amount equal to three times the amount of damages the State of California has sustained because of Defendants' actions, plus a civil penalty of not less than of not less than Ten Thousand Dollars ($10,000.00), for each false claim, plus three times the amount of damages which the State of California has sustained, pursuant to Cal. Govt. Code § 12651(a).

3. Award to Relator of the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the Federal False Claims Act on the United States' recovery;

4. Award to Relator of the maximum amount allowed pursuant to Cal. Govt. Code § 12652(g), the California False Claims Act, on the State of California's recovery;

7. Award to Relator of all reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs;

8. Punitive damages on all causes of action, to the extent allowable by law; and

9. Injunctive relief; and

10. Such other and further relief as the Court deems proper.

DATED: August 6, 2007           BARTLEY LAW OFFICES
                                ATTORNEYS FOR RELATOR

                                By: _____
                                    Daniel Robert Bartley

**Demand for Jury Trial**

Plaintiffs demand a trial by jury, pursuant to FRCP 38.

DATED: August 6, 2007           BARTLEY LAW OFFICES
                                ATTORNEYS FOR RELATORS

                                By: _____
                                    Daniel Robert Bartley